[No. 11250.   Department Two.   August 13, 1913.]

JACOB S. SMITH, *Respondent*, v. McLAIN ORCHARD COMPANY, *Appellant*.[1]

CORPORATIONS—STOCKHOLDERS—ACTIONS—MONEY LENT—EVIDENCE —SUFFICIENCY.   The evidence is insufficient to sustain findings that money advanced by plaintiff, while a stockholder, was loaned to the corporation, where it appears that three stockholders, each holding one-third of the stock, agreed to contribute equally the moneys required to be expended on farm lands belonging to the corporation, which was done, and plaintiff's letters clearly negative that his advances were loans repayable by the corporation, and he made no such claim until after he had disposed of his stock in the corporation.

Appeal from a judgment of the superior court for Whatcom county, Kellogg, J., entered January 8, 1913, upon findings in favor of the plaintiff, in an action for money lent, tried to the court.   Reversed.

*Hadley, Hadley & Abbott*, for appellant.

*Craven & Greene*, for respondent.

FULLERTON, J.—In the early part of the year 1910, Jacob S. Smith, N. W. Wear and W. G. McLain jointly purchased certain lands, situated in Grant county, Washington, having a purpose, as they testified, of developing the same into farm and orchard lands. Between the date of the purchase and

[1]Reported in 134 Pac. 469.

August 27 of the same year, they each advanced several sums of money by way of advancing the enterprise. On the last named date, they formed a corporation under the name of the McLain Orchard Company, with a capital stock of $6,000, divided into 60 shares of the par value of $100, for which they subscribed in equal amounts. In part payment of their stock subscriptions, they conveyed to the corporation the lands jointly owned by them, subject to certain incumbrances which the corporation assumed and agreed to pay, at a valuation of $3,000, taking credit for $1,000 each. The balance of the subscription price was paid in part by crediting to each of the stockholders the advancements he had made for the use on the land prior to the incorporation, and in part by cash, or by notes taken as cash and which were afterwards paid.

With the view of financing the enterprise, the incorporators agreed that McLain should take personal supervision of the lands and contribute his services to the corporation at a valuation of $150 per month (shortly afterwards reduced to $100 per month), and that each of the others should, from time to time, contribute in money to the corporation a sum equal to that contributed by McLain. Between the date of the incorporation and October 22, 1911, Smith advanced, pursuant to the agreement, $1,056.50, and McLain advanced an equal or greater amount. The advancement made by Wear during this time is not shown definitely, but it was not much, if any, short of the advancement made by Smith. In February, 1912, Smith sold his stock to McLain and Wear, and from thenceforth has had no interest in the corporation or its affairs.

On August 31, 1912, Smith began the present action against the corporation to recover the amount of his advancement, alleging in his complaint that the advancements were made by way of a loan to the corporation, and that the sums so advanced were then due and owing him from the corporation and were unpaid. Issue was taken on the alle-

gations of the complaint by the corporation, and a trial had before the court sitting without a jury, which resulted in findings and a judgment for the plaintiff. The corporation appeals.

The trial court reached the conclusion that the money advanced by Smith to the use of the corporation was advanced as a loan, for the repayment of which no definite time was fixed, and, consequently, it could be recovered whenever the person making the advances willed it. We do not think this conclusion is justified by the evidence. It is true, Smith so testified; but in this he is squarely contradicted by both McLain and Wear, the other incorporators, and the circumstances surrounding the transaction, we think, favor the version of McLain and Wear rather than that of Smith. Smith himself testified that the purpose of advancing the money was to "develop the property" of the corporation, and that it was no part of the original agreement under which the advancements were made that such advancements should be treated as loans to the corporation, withdrawable at the pleasure of the person making them, but that the original agreement was afterwards modified to that effect. In the record, also, are a number of letters written by Smith to McLain concerning these advancements, running down to within a month of the time Smith sold his stock to McLain and Wear; in one of which he says, "Any money you put up on improvements this month I will have to stand you off for:" In another, he refers to the fact that he is behind in his payments, and offers to "turn over stock to you to the amount you have advanced for any one-third expense at the end of this month, if you think it advisable." In another, he says, speaking of a remittance, "This puts me in the clear to date with company. Put off next call as long as possible"; and in a letter as late as January 8, 1912, about one month prior to the time he sold his stock, he wrote, "I haven't lost faith in the proposition at all, I believe it is a money maker. Can't see how it can pan out otherwise. But I know you can't run

that business without money, and we can never make any-thing out of it unless something is spent." Then, after enu-merating certain of his obligations that were coming due, concludes: "So as much as am sorry to say it I can't send you any money"; and then offers to take certain notes in payment in the case McLain should determine to buy his in-terests in the company. The assertions and statements con-tained in these letters clearly negative any idea that Smith then considered these advancements as loans repayable by the corporation at all, much less that they were loans repay-able on demand at any time. Again, McLain and Wear tes-tify, and Smith admits, that Smith made no claim for these advancements at the time he sold his stock in February, 1912; and this again, we think, is some evidence that the claim is an afterthought. Furthermore, the agreement is an im-probable one at best. The money and services agreed to be advanced were to be expended upon farm land. The land might or might not advance in value in proportion to amount so expended thereon. If it was agreed that the person making the advancements could cease so doing at any time and recover from the corporation the amount he had then advanced, it is plain that the others would be driven to that course whenever any such action should be begun, as the advancements of any one might be an undue proportion of the assets of the corporation, compelling the other to join in order to secure a *pro rata* division of such assets, thus frus-trating the purposes of the corporation at the whim of one of the incorporators.

But the inquiry need not be pursued. The evidence, to our minds, preponderates against the conclusion of the trial court. The judgment appealed from is reversed, and the cause re-manded with instructions to enter judgment to the effect that the respondent take nothing by his action, and that the appellant recover costs.

CROW, C. J., MAIN, ELLIS, and MORRIS, JJ., concur.